H. T. HUGULEY, Appellant,

v.

BOARD OF ADJUSTMENT OF CITY OF DALLAS et al., Appellees.

No. 15783.

Court of Civil Appeals of Texas.

Dallas.

Oct. 7, 1960.

Rehearing Denied Nov. 23, 1960.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellant.

H. P. Kucera, City Atty., and Ted P. MacMaster and Arthur Schroeder, Jr., Asst. City Attys., Dallas, for appellees.

THOMAS, Justice.

Appellant, Dr. H. T. Huguley, filed this suit for a writ of certiorari under the provisions of Art. 1011g, V.A.C.S., challenging the legality of the decision of the Board of Adjustment of the City of Dallas entered on October 28, 1958, sustaining prior decision of the Building Inspector denying to him a certificate of occupancy to use and occupy as a trailer court the southern part of a tract of land of about 2.8 acres and designated as 10001 North Central Expressway. The tract is in a district zoned for single family residential use. Appellant alleged that his tract was used for a trailer court as well as for a tourist court prior to March 3, 1953, when the tract was annexed to the City of Dallas, and he had the right to continue such use as a nonconforming use under the Zoning Ordinance of the City.

Appellant's right to use the northern part of the tract upon which there are about 19 tourist cottages or cabins as a nonconforming tourist court is not in question.

The members of the Board answered, assigning their reasons for refusing the certificate of occupancy. The minutes of the Board, made a part of its return, disclose that the certificate of occupancy was denied because the Board found from the evidence presented to it, both pro and con, that there was no nonconforming use of a trailer park or court in existence at the time of annexation and therefore no nonconforming use existed at the time of the Board's order.

The City of Dallas intervened seeking a mandatory injunction directing appellant to remove all house trailers off the property involved and also sought a permanent injunction enjoining appellant from using the premises as a trailer park or trailer court in the future, or for any other purpose not permitted in the area zoned for single family residence purposes.

A jury was impaneled; appellant introduced his evidence including the verified record of the Board's proceedings, and rested, whereupon the court sustained appellees' motion to withdraw the case from the jury and, entered judgment affirming the decision of the Board of Adjustment, denied appellant any relief and granted a mandatory injunction to the City of Dallas ordering appellant to immediately and forthwith remove any and all house trailers from the premises and permanently restraining appellant from using the premises for the purposes of a trailer park or trailer court or any purpose other than that for which it is zoned.

Appellant's points of appeal (twelve in number), none of which are well taken, can be narrowed to the following propositions, broadly stated:

(A) The Board of Adjustment as a matter of law does not have the power and jurisdiction to pass upon the fact issue of whether or not a nonconforming use existed on appellant's property when annexed to the City of Dallas.

(B) Under the Constitution of the United States and of the State of Texas appellant is entitled to have a jury pass upon the existence or nonexistence of a nonconforming use of his property at the time of annexation to the City of Dallas.

(C) The court's judgment affirming the decision of the Board of Adjustment is not supported by the proper quantum of evidence because (a) the decision of the Board of Adjustment is not supported by substantial evidence, (b) there is no evidence supporting the decision of the Board of Adjustment, (c) there is no evidence supporting the court's judgment, and (d) the great weight and preponderance of evidence is contrary to the decision of the Board of Adjustment and the court's judgment.

(D) There is no evidence to support judgment granting a mandatory and permanent injunction to intervenor, City of Dallas.

Appellant's tract of about 2.8 acres faces some 680 feet along the west side of the service road paralleling North Central Expressway. With other lands, it was an-

nexed to the City of Dallas on March 3, 1953 and all became zoned temporarily for single family residence use until permanent zoning after hearing could be effected under the Zoning Ordinance of Dallas.

Prior to these proceedings Dr. Huguley's property had been involved in five other proceedings, to-wit: (1) soon after annexation in 1953 the City Plan Commission recommended and the City Council approved permit and certificate of occupancy for Dr. Huguley to complete construction of 5 tourist cottages for a total of 19 cottages to be used as "The Coit Tourist Lodge"; (2) at permanent zoning hearing in 1953 appellant requested Tourist Camp Zoning (C–1 Commercial), but single family residence classification was imposed; (3) about a year later the Board of Adjustment granted a permit to appellant to erect a sign advertising the tourist court; (4) in January 1957, the Board of Adjustment denied a permit to appellant to erect a neon sign; and (5) late in 1957 permit was granted to erect a metal fence along the front of the property "as accessory to tourist court". The existence of a trailer court was not referred to in any of the foregoing proceedings except the last; there, an "existing trailer court" was referred to on appellant's application, but the permit was granted only for fence for the tourist court.

Until August 18, 1958, when appellant applied for permit and certificate of occupancy to operate a trailer court on the property he had not complied in any respect with City Ordinance 4720 regulating trailer courts or parks and tourist courts which requires (1) Certificate of Occupancy by Building Inspector after inspection; (2) license from City Health Officer with annual renewals; (3) annual license fee based on number of units in use; (4) register of persons furnished accommodations; and (5) copy of all management records kept on premises for inspection of law enforcement and health authorities.

The verified return filed by appellee Board of Adjustment consists of copies of originals of numerous documents and a record of testimony under oath of many witnesses. Appellant and several witnesses he called testified that the southern part of the 2.8 acres had been improved prior to annexation to the City with a small wooden building equipped with washroom and toilet facilities, as well as with electrical connections, graveled driveways, and fences for use as a house trailer park or court, and that some house trailers "but not too many" were using the site prior to, at the time of and since annexation.

In sharp conflict with appellant's evidence, several witnesses living in the neighborhood testified that except for a temporary use of the site for parking of house trailers by workmen on Central Expressway who moved along the highway as construction progressed, no other use had been made of appellant's property by house trailers until a trailer had been placed on the property about three months prior to the hearing before the Board. Area Inspectors from the Dallas Building Inspector's office first knew of a house trailer use of the property in 1958, although making inspections in the area every few days. They then issued a stop order directing appellant to remove the trailer and filed charges in the Corporation Court against him for violating the zoning ordinance.

The Board of Adjustment upheld the decision of the Building Inspector denying a permit and certificate of occupancy to appellant for the use of his property as a trailer park or court saying: "That the finding of this Board, from the evidence presented to it, both pro and con, is that there was no non-conforming use of a trailer park or court in existence at the time of annexation, and therefore no non-conforming use exists today."

A. Art. 1011g, V.A.C.S., authorizes a board of adjustment, prescribes its membership and procedure, and authorizes appeals from its decisions. As to such board's powers Art. 1011g in part provides:

"The board of adjustment shall have the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto."

The Comprehensive Zoning Ordinance of the City of Dallas adopted pursuant to the Zoning Act, Arts. 1011a–1011k, V.A.C.S., in part provides:

(1) A nonconforming use is any that does not conform to the Zoning Ordinance but which was in existence prior to effective date of ordinance. (That date, as to appellant's property, is March 3, 1953, when it was annexed.)

(2) Any nonconforming use of land may be continued for definite periods of time and subject to regulations as the Board of Adjustment may require for preservation of the adjoining property and the ultimate removal of the nonconforming use, it being the declared purpose of the ordinance that nonconforming uses be eliminated and required to conform having due regard for the property rights of the persons affected.

(3) It being the declared purpose of the Ordinance that nonconforming uses be eliminated, the Board of Adjustment shall, from time to time on its own motion or upon cause presented by interested property owners, inquire into the existence, continuation or maintenance of any nonconforming use.

(4) That the Board of Adjustment shall have all the powers granted by and be organized and controlled by Art. 1011g, V.A.C.S.

(5) The provisions of the Ordinance shall be administered and enforced by the Building Inspector.

In Washington v. City of Dallas, 159 S. W.2d 579, 580, this court said:

"A claim to a nonconforming use under zoning ordinances is uniformly determinable by appeal to a Board of Adjustment from an order of the Building Inspector (or similar administrative official), and then by certiorari to the courts." (Citing authorities.)

See also City of Dallas v. Halbert, Tex. Civ.App., 246 S.W.2d 686; Gulf, Colorado & Santa Fe Ry. Co. v. White, Tex.Civ. App., 281 S.W.2d 441; Rosenthal v. City of Dallas, Tex.Civ.App., 211 S.W.2d 279, 291; Sams v. Dema, Tex.Civ.App., 316 S.W.2d 165. Appellant relies upon City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W. 2d 229, 234, and the statements of Associate Justice Looney expressing his personal opinion in Terry v. City of Dallas, Tex. Civ.App., 175 S.W.2d 97.

City of Amarillo v. Stapf, supra, establishes the principle that a board of adjustment does not have jurisdiction "to designate for the first time foundries in the second manufacturing district" instead of the first manufacturing district. Of course, such action is zoning, and the function of the legislative body of the City. The Stapf case does not support appellant's contention.

Justice Looney's personal opinions expressed in Terry v. City of Dallas, supra, were not shared by the majority of this Court as we pointed out later in City of Dallas v. Halbert, supra. In fact, he apparently changed his opinion because in Rosenthal v. City of Dallas, Tex.Civ.App., 211 S.W.2d 279, 291, he said "The building inspector was the only City Official who could lawfully determine the existence of facts supporting the nonconforming use * * *; and the determination of these questions being placed upon the inspector by the legislature and the City Council, his rulings when supported by evidence as in the instant case, cannot be attacked except by appeal as provided in Art. 1011g," i. e., to the Board of Adjustment.

■ ■ B. Appellant had no constitutional right to have a jury pass de novo upon the issue as to the existence or nonexistence of a nonconforming use upon his property. The Federal Constitution does not expressly guarantee the right of trial by jury in any State Court in any character of case, and the due process clause does not require a jury trial in a State Court. White v. White, 108 Tex. 570, 196 S.W. 508, L.R.A.1918A, 339; Vol. 16A C.J.S. Constitutional Law § 623, p. 829; 12 Am.Jur. p. 311.

■ Under Art. 1, Sec. 15, 19 and 29 of the Constitution of Texas, Vernon's Ann.St., providing that "right of trial by jury shall remain inviolate" a litigant is "entitled to a trial by jury, in the full constitutional sense, if that practice prevailed in this State, according to the then existing laws, at the time of the adoption of said provisions as portions of our present State Constitution of 1876". White v. White, supra [108 Tex. 570, 196 S.W. 512]. Hickman et ux. v. Smith, Tex.Civ.App., 238 S.W.2d 838 (error refused).

Whitney R. Harris, Esq., in his excellent article "The Administrative Law of Texas", 29 Texas Law Review 213, says: "Since appeals from administrative decisions were unknown to Texas law at the time of the adoption of the Constitution, there is no right to a jury in actions brought to review administrative decisions, unless the Statute so provides." National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; 42 Am. Jur. 486, Sec. 142.

In City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, 172, (error refused) certiorari denied 315 U.S. 781, 62 S.Ct. 806, 86 L.Ed. 1188, appellee recovered judgment compelling City to grant him a permit for the erection of a building after jury findings in effect that the Board of Adjustment in denying the permit acted unreasonably and arbitrarily under the facts. In reversing and rendering the judgment of the trial court, this court discussed the question of whether a jury should pass upon the facts and the findings of the Board of Adjustment, saying:

"The issue therefore narrows to the inquiry, shall the findings of the Board govern in a matter entrusted by law to their discretion (a purely governmental function), or the findings of the jury be substituted therefor? Courts may determine whether or not it appears that the governing body of a city acted arbitrarily, but when the facts are fairly debatable legislative judgment of the legally constituted Board must prevail. * * * Or, if it can be said that the evidence raises the issue of any of the material facts upon which the city authorities refused the permit, then the law delegates to the city authorities, and not to courts or juries, the power and duty of determining the sufficiency of issuable facts in the exercise of a purely governmental function."

■ In this case Dr. Huguley demanded and obtained a jury which heard all the record of the proceedings before the Board and his witnesses. However, the court properly withdrew the case from the jury because there were no issues of fact since it appeared that the decision of the Board of Adjustment was supported by substantial evidence introduced in court.

C. In considering appellant's points of error directed at the state of evidence, the following principles control:

■ ■ (a) Boards of Adjustment when functioning within their jurisdiction pursuant to Statutes comparable to Arts. 1011a–1011j, V.A.C.S., act as quasi-judicial bodies. Washington v. City of Dallas, Tex.Civ. App., 159 S.W.2d 579, and there is a presumption of legality with respect to permits, special uses, nonconforming uses and the like. A party seeking relief from a decision of a board of adjustment relative to nonconforming uses has the burden of proof to establish illegality. Montgomery v. City of Dallas, Tex.Civ.App., 245 S.W.

218

2d 753; McQuillin on Municipal Corporations, 3rd Ed. Vol. 8, Secs. 25.327–25.328.

(b) The court in considering the legality of the order of the board of adjustment must not put itself in the position of the board and substitute its findings for that of the board even though the court concludes that the overwhelming preponderance of the evidence is against the board's decision. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67. "The question is whether or not there is any substantial evidence affording reasonable support for such findings and orders entered thereunder. That is a question of law." Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420, 421; City of Dallas v. Stevens, Tex.Civ.App., 310 S.W.2d 750. If the evidence before the court as a whole is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action, then the order must be sustained. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424, 441.

(c) Art. 1011g contemplates that the trial court shall consider the board's verified return into court along with the evidence introduced. City of San Angelo v. Boehme Bakery, supra. Indeed, it has been held that the court may refuse to hear any further evidence if the record of the board's proceedings returned into court supports the findings of the board as to the existence of a nonconforming use. Rowton v. Alagood, Tex.Civ.App., Waco, 250 S.W. 2d 264.

(d) As said by Justice Werlein in Biddle v. Board of Adjustment, Village of Spring Valley, Tex.Civ.App., 316 S.W.2d 437, 442: "Mere preparation for use of the property before adoption of a zoning ordinance is not enough to show a devotion of the property to that use. An 'existing use' should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. See Caruthers v. Board of Adjust-

ment of City of Bunker Hill Village, Tex. Civ.App., 290 S.W.2d 340; Appeal of Haller Baking Co., 295 Pa. 257, 145 A. 77; Fairlawns Cemetery Ass'n, Inc., v. Zoning Commission of Town of Bethel, 138 Conn. 434, 86 A.2d 74." See also Meserole v. Board of Adjustment, City of Dallas, Tex. Civ.App., 172 S.W.2d 528.

Keeping the foregoing principles in mind, we have reviewed the entire record filed by the appellee Board in the trial court as well as the other evidence introduced by appellant, and while recognizing that there is very strong evidence to support appellant's contention that a nonconforming use as a trailer park existed, nevertheless we think it is clear that the Board's findings and decision are sustained by substantial evidence.

D. Since the Board of Adjustment found that no nonconforming use existed at the time of the annexation of appellant's property, and this finding has support in substantial evidence, it was of course a violation of the zoning ordinance for appellant subsequently to use the property as a trailer court. That he had so used the property is not disputed. Appellant himself so pled; he testified in court that one house trailer was located on the property and although not used "too many times" the area has been used all the time for trailer park purposes. The manager of his tourist court testified in court that although "we didn't have too many calls for it" since 1955 when he became manager the facilities had been available and used by occupants of the trailers renting space on the trailer park. In view of such pleading and testimony which we must regard in the nature of admissions, it was proper for the court to grant the City the mandatory and permanent injunction sought in its intervention without further evidence.

In Caulk v. Anderson, 120 Tex. 253, 37 S.W.2d 1008, 1009, our Supreme Court said "that the decisions of the Supreme Court 'are conclusive that there is no need to

prove a fact admitted in pleadings of all parties.' Lafield v. Maryland Casualty Co., [119 Tex. 466] 33 S.W.2d 187, 189."

Furthermore, appellant Huguley's testimony with that of his tourist court manager is binding upon him and no issue of fact existed on the question of whether appellant is using his property as a house trailer park in violation of the zoning ordinances. MacDonald v. Carlisle, 146 Tex. 206, 206 S.W.2d 224; Texas & Pacific Ry. Co. v. Wood et al., 145 Tex. 534, 199 S.W.2d 652.

Accordingly, all of appellant's points of error are overruled and the judgment appealed from is affirmed.